1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHNNY C. THOMAS,

11           Petitioner,                 No. CIV S-11-0180 CKD

12       vs.

13   GARY SWARTHOUT,                     ORDER &

14           Respondent.                 FINDINGS AND RECOMMENDATIONS

15   _____/

16           Petitioner is a state prisoner proceeding pro se with an application for writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  This action is proceeding on the first amended

18   petition filed on April 28, 2011.  (Dkt. No. 11 ("Ptn.").)  Pending before this court is

19   respondent's June 28, 2011 motion to dismiss the petition in part on the grounds that three of

20   petitioner's claims are unexhausted, and one of his claims is not cognizable in federal law.  (Dkt.

21   No. 15 ("Mtn.").)  Also pending is petitioner's July 17, 2011 motion to voluntarily dismiss the

22   petition in part, conceding that two of his claims in the first amended petition are unexhausted

23   and requesting that these claims be dismissed.  (Dkt. No. 19.)  Petitioner has also filed a motion

24   for summary judgment (Dkt. No. 17) and a motion for an evidentiary hearing.  (Dkt. Nos. 17,

25   22.)  The undersigned addresses all of these motions below.

26   ////

## FACTUAL BACKGROUND

The following factual summary is taken from the California Court of Appeal, First Appellate District's opinion on direct appeal, dated July 24, 2009:

On the evening of June 28, 2005, Belinda Hill (the victim) visited the Fairfield apartment of her friends Barbara and Nicholas Rubio. FN2 The three drank beer but did not use drugs. Around 2:00 the next morning, defendant went to the Rubios' apartment and knocked on their window. Barbara let defendant into her home, and defendant began threatening the victim about coming home. The victim told defendant she "would be there," defendant left, and the victim spent the night at the Rubios' apartment.

FN2. To avoid confusion, we refer to the Rubios by their first names.

Later that morning, around 8:00, defendant returned to the Rubios' apartment, banged on their front door, and entered the apartment. Defendant threw Nicholas's phone down and "just went wild." He punched the victim, kicked her in the ribs, grabbed her by the head, and slammed her onto the dining room table, breaking the table in half. According to Nicholas, the victim tried to get out of the apartment, but defendant hit and kicked her until she was on the ground in "a puddle of blood." Barbara testified that defendant dragged the victim out of the Rubios' apartment by her hair. Barbara went to her next door neighbor's apartment and asked her neighbor to call 911.

Defendant fled in a white car. When police arrived at the scene, they saw blood in the hallway that led to the Rubios' apartment. The victim was in the Rubios' apartment holding a blood-soaked compress to her head. She had a "golf ball size egg on her forehead" and an open cut on her face that was bleeding. The victim was taken by ambulance to the hospital, where she was crying and visibly upset. She had a "gaping wound" over her eye that required stitches. The victim appeared to be under the influence of alcohol. Police spoke with the victim at the hospital, and she appeared to be frightened to report who caused her injuries.

Police were dispatched back to the Rubios' apartment around 8:53 a.m. after receiving a report that the person who beat the victim had returned and was banging on the door. When officers arrived at the scene, they saw a white car that appeared to be unoccupied in front of the apartment complex. When officers walked toward the apartment, they saw defendant's head "pop up" in the back seat of the car. Defendant was arrested. After he was read his rights pursuant to Miranda v. Arizona (1966) 384 U.S. 436, defendant said that the victim was injured when she fell down.

Defendant was charged by information with corporal injury to a spouse or cohabitant (Pen.Code, § 273.5, subd. (a) FN3-count 1), with an allegation that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). The information also alleged a strike prior (§§ 667, subds.(b)-(I), 1170.12, subds. (a)-(d)) based on a 1983 homicide conviction in Texas. The information later was amended to allege an additional strike prior based on a 1975 Texas burglary conviction. As set forth more fully below ( post, § II.C.1), a second amended information was later filed to add a count of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)-count 2), with an allegation that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)).

FN3. All statutory references are to the Penal Code unless otherwise indicated.

Defendant was represented by counsel at his preliminary hearing, but the trial court later granted defendant's motion pursuant to Faretta v. California (1975) 422 U.S. 806 (Faretta) to represent himself.  Defendant represented himself at his first trial, which ended in a hung jury; the trial court declared a mistrial. An attorney represented defendant at his second trial after defendant requested counsel. Nicholas and Barbara testified at the second trial, and identified defendant as the person who beat the victim. The victim did not testify after a deputy public defender representing her stated that the victim would be asserting her Fifth Amendment privilege against self-incrimination, based on the fact that she might expose herself to perjury charges for filing a false police report. FN4 Because the People did not want to grant the victim immunity, the prosecutor elected to proceed to trial without the victim's testimony. However, members of the victim's family, including her teenaged daughter, testified that defendant was driving the victim's daughter to school at the time of the beating, which supported defendant's claim that the Rubios fought with the victim and defendant arrived only after the victim suffered injuries.

FN4. Defendant previously had filed a "Declaration of Innocence Statement" from the victim, in which she claimed that it was the Rubios and their neighbor, not defendant, who beat her, and that they also forced her to accuse defendant of the beating.

The jury found defendant guilty as charged, and found the related great bodily injury allegations true. Following a court trial, the trial court found the prior conviction allegations true.FN5

FN5. The trial court later granted defendant's motion for a new trial as to the strike based on the Texas burglary conviction. The prosecutor later conceded that the burglary conviction should be stricken, because there was insufficient proof that the conviction

3

1          qualified as a residential burglary under California law.

2          The trial court sentenced defendant to a total term of 18 years,
           calculated as follows: the upper term of four years on count 1,
3          doubled to eight years because of the strike prior, plus the upper
           term of five years on the great bodily injury enhancement (§
4          12022.7, subd. (e)), with an additional five years for the serious
           felony enhancement (§ 667, subd. (a)(1)).FN6 Defendant timely
5          appealed.

6          FN6. Sentence was stayed pursuant to section 654 on count 2.

7    (Dkt. No. 15-1 at 20-23.)

8                         PROCEDURAL BACKGROUND

9          As described above, in 2008, following a jury trial and retrial in the Solano

10   County Superior Court, petitioner was convicted of one felony count of corporal injury to a

11   spouse or cohabitant and one felony count of assault by means likely to produce great bodily

12   injury, each count enhanced for the infliction of great bodily injury under circumstances

13   involving domestic violence.  (Ptn. at 1; Dkt. No. 15-1 at 8, citing California Penal Code §§

14   273.5, subd. (a) and 12022.7, subd. (e).)  The trial court found that petitioner had one "strike"

15   prior conviction for homicide, which also served as a prior serious felony conviction, and

16   sentenced petitioner to a total of 18 years in prison.  (Dkt. No. 15-1 at 22-23.)

17         Petitioner appealed the judgment, which was affirmed by the California Court of

18   Appeal, First Appellate District in a reasoned opinion on June 24, 2009.  (Dkt. 15-1 at 20-41.)

19   Petitioner filed a petition for review in the California Supreme Court on September 1, 2009 (id.

20   at 3-17), which was denied on November 10, 2011 (id. at 2).

21         Petitioner filed a petition for writ of habeas corpus in the California Court of

22   Appeal, First Appellate District, which was denied on March 12, 2009.  (Id. at 53, 141.)  He next

23   filed a petition for writ of habeas corpus in the California Supreme Court (id. at 48-141), which

24   was summarily denied on February 16, 2011.  (Id. at 46-47.)

25         On January 20, 2011, petitioner commenced this action by filing a federal petition

26   for writ of habeas corpus.  (Dkt. No. 1.)  On April 28, 2011, he filed the operative amended

1  petition raising several claims concerning his 2008 trial and conviction.

2  On June 28, 2011, respondent filed a motion to dismiss the petition in part,

3  arguing that petitioner had not exhausted state remedies as to three claims: (1) ineffective

4  assistance of trial counsel Moe; (2) trial court erred in admitting prior conviction for

5  impeachment purposes; and (3) trial court erred in denying petitioner's motion to suppress

6  evidence.  (Mtn. at 2-3.)  Respondent also argued that petitioner's actual innocence claim should

7  be dismissed as it is not cognizable on federal habeas corpus review.  (Id. at 4-5.)

8  On July 19, 2011, petitioner filed a motion to dismiss in part, conceding that he

9  had not exhausted state remedies as to claims (2) and (3) above, and asking the court to dismiss

10  those claims.  (Dkt. No. 19.)  In his opposition to the motion to dismiss, also filed July 19, 2011,

11  petitioner argues against dismissal of claim (1) above, claiming ineffective assistance of trial

12  counsel Moe, and also argues against dismissal of his actual innocence claim.  (Dkt. No. 20.)

13  On July 29, 2011, respondent filed a reply noting that petitioner had conceded

14  non-exhaustion of two claims at issue.  (Dkt. No. 23.)

15  Also, on July 7, 2011, petitioner filed a three-page motion for relief (entitled a

16  "motion for summary judgment") asking the court to "vacate his conviction, order an evidentiary

17  hearing and order this petitioner to be release[d] within 10 to 30 days of the evidentiary

18  hearing."[1]  (Dkt. No. 17.)  On July 22, 2011, petitioner filed a motion for an evidentiary hearing

19  "to present arguments, newly supplied record and testimony of witnesses" as to his claims.  He

20  argued such a hearing was due because the California Supreme Court issued a summary denial of

21  his claims without making factual findings.  (Dkt. No. 22.)

22  ////

23

24  [1] In this motion, petitioner summarizes his claims in the operative petition as follows: (1)
    ineffective assistance of counsel; (2) prosecutorial misconduct, [as] the prosecution knowingly
25  introduc[ed] [perjured] testimony resulting in a tainted conviction of petitioner; (3) ineffective
    assistance of trial counsel; (4) petitioner was denied his due process right to confront his accuser;
26  and (5) petitioner's showing of actual innocence.  (Dkt. No. 17 at 1-2.)

1                                          ANALYSIS

2    I. Respondent's Motion to Dismiss in Part

3    A.  Failure to Exhaust

4              Respondent asserts that three of petitioner's claims should be dismissed for failure

5    to exhaust state remedies.

6              The exhaustion of state court remedies is a prerequisite to the granting of a

7    petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  If exhaustion  is to be waived, it

8    must be waived explicitly by respondent's counsel.  28 U.S.C. § 2254(b)(3).[2]  A waiver of

9    exhaustion, thus, may not be implied or inferred.  A petitioner satisfies the exhaustion

10   requirement by providing the highest state court with a full and fair opportunity to consider all

11   claims before presenting them to the federal court.  Picard v. Connor, 404 U.S. 270, 276 (1971);

12   Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).

13             It is not enough that all the facts necessary to support the federal claim were

14   before the state courts, Picard, at 277, or that a somewhat similar state-law claim was made.  See

15   Duncan v. Henry, 513 U.S. 364, 366 (1995).  The habeas petitioner must have "fairly presented"

16   to the state courts the "substance" of his federal habeas corpus claim.  Picard, supra, 404 U.S. at

17   275, 277-278.  See also, Rose v. Lundy, 455 U.S. 509 (1982).

18             Petitioner has the burden of proving exhaustion of state court remedies and in

19   California a petitioner must present his claims to the California Supreme Court.  Cartwright v.

20   Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981); Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir.

21   1986).

22             Here, of the four claims at issue in respondent's motion to dismiss, it is

23   uncontested that two are unexhausted: the trial court erred in admitting prior conviction for

24   impeachment purposes; and the trial court erred in denying petitioner's motion to suppress

25   _____

26   [2] A petition may be denied on the merits without exhaustion of state court remedies.  28
     U.S.C. § 2254(b)(2).

                                                  6

1  evidence.  (See Background, supra.)  Accordingly, the court will recommend that respondent's

2  motion to dismiss be granted as to these claims.

3  　　　　　Respondent argues that a third claim, ineffective assistance of trial counsel Moe,

4  is also unexhausted because, while petitioner challenged the effectiveness of another attorney

5  (preliminary hearing counsel Dawn Polvorosa) in his petition for writ of habeas corpus to the

6  California Supreme Court, "such did not serve to exhaust remedies for a challenge to a different

7  counsel's performance at trial." (Mtn. at 2.)  Having reviewed both of petitioner's briefs to the

8  California Supreme Court – on direct appeal and seeking habeas review, respectively – the

9  undersigned concludes that petitioner never presented his claim concerning trial counsel Moe to

10  the state's highest court.  (See Dkt. No. 15-1 at 64-65 (arguing that petitioner's public defender

11  Dawn Polvorosa was ineffective at the preliminary hearing stage).)

12  　　　　　In fact, in his opposition to the motion to dismiss, petitioner does not contend that

13  he presented this claim to the California Supreme Court.  Rather, he argues against dismissal of

14  this claim because he raises it in conjunction with a claim of actual innocence.  (Dkt. No. 20 at 2-

15  3 ("trial counsel's Ronald Moe's deficient trial [performance] has resulted in this actually

16  innocent petitioner being convicted").)  Petitioner asserts that there is an exception to the

17  exhaustion requirement for claims that implicate actual innocence.  This is incorrect.  In House v.

18  Bell, 547 U.S. 518, 522 (2006), the Supreme Court held that, "in certain exceptional cases

19  involving a compelling claim of actual innocence, . . . the state procedural default rule is not a

20  bar to a federal habeas corpus petition."  However, respondent's motion does not concern the

21  procedural default rule, but simply points out that petitioner never presented his ineffective

22  assistance claim to the state's highest court.  See, e.g., Ray v. Cate, 2011 WL 1464940 at *3

23  (E.D. Cal. April 15, 2011) (granting motion to dismiss actual innocence claim "because it was

24  not presented to the state's highest court.").  Thus, petitioner's ineffective assistance claim

25  should be dismissed for failure to exhaust.

26  \\\\

1    B. Actual Innocence Claim

2           Respondent asserts that "[p]etitioner appears to raise a freestanding claim of

3    actual innocence in his petition.  Such a claim is not cognizable on federal habeas review."  Mtn.

4    at 4.[3]  Respondent argues that, because the United States Supreme Court has left it unsettled

5    whether a freestanding claim of actual innocence may state a claim for federal habeas relief,

6    petitioner has not asserted a violation of "clearly established Federal law" pursuant to 28 U.S.C.

7    § 2254(d)(1[4]; therefore, his actual innocence claim should be dismissed.

8           In Herrera v. Collins, 506 U.S. 390 (1993), a majority of the Supreme Court

9    assumed, without deciding, that a freestanding claim of actual innocence is cognizable under

10   federal law.  In this regard, the court observed that "in a *capital* case a truly persuasive

11   demonstration of 'actual innocence' made after trial would render the execution of a defendant

12   unconstitutional, and warrant federal habeas relief if there were no state avenue open to process

13   such a claim."  506 U.S. at 417 (emphasis added).  A different majority of the Supreme Court

14   _____

15      [3]  Petitioner counters that his claim of innocence is not "freestanding" but based on
     underlying constitutional errors at his trial.  (Dkt. No. 20 at 5.)  However, insofar as petitioner
16   seeks to introduce new evidence and/or evidence not presented at his second trial demonstrating
     that he "was totally innocent of the crime in which he is now incarcerated for committing" (id. at
17   5-6), he raises a "freestanding" actual innocence claim.

18      [4]  Federal habeas corpus relief is not available for any claim decided on the merits in state
     court proceedings unless the state court's adjudication of the claim:

19
                 (1) resulted in a decision that was contrary to, or involved an
20               unreasonable application of, clearly established federal law, as
                 determined by the Supreme Court of the United States; or
21
                 (2) resulted in a decision that was based on an unreasonable
22               determination of the facts in light of the evidence presented in the
                 State court proceeding.
23
     28 U.S.C. § 2254(d).  "Clearly established" law is law that has been "squarely addressed" by the
24   United States Supreme Court.  Wright v. Van Patten, 552 U.S. 120, 125 (2008).  Thus,
     extrapolations of settled law to unique situations will not qualify as clearly established.  See e.g.,
25   Carey v. Musladin, 549 U.S. 70, 76 (2006).  It is the habeas petitioner's burden to show he is not
     precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25
26   (2002).

1   explicitly held that a freestanding claim of actual innocence is cognizable in a federal habeas

2   proceeding.  Compare 506 U.S. at 417 with 506 U.S. at 419, 430–37.  See also Jackson v.

3   Calderon, 211 F.3d 1148, 1165 (9th Cir. 2000) (noting that a majority of the Justices in Herrera

4   would have found a freestanding claim of actual innocence).  Although the Supreme Court did

5   not specify the standard applicable to this type of "innocence" claim, it noted that the threshold

6   would be "extraordinarily high" and that the showing would have to be "truly persuasive."

7   Herrera, 506 U.S. at 417.  More recently, the Supreme Court declined to resolve whether federal

8   courts may entertain independent claims of actual innocence but concluded that the petitioner's

9   showing of innocence in the case before it fell short of the threshold suggested in Herrera.  House

10  v. Bell, 547 U.S. 518, 554-551 (2006).  Finally, the Supreme Court has recently once again

11  assumed, without deciding, that a federal constitutional right to be released upon proof of "actual

12  innocence" exists.  District Attorney's Office for Third Judicial Dist. v. Osborne, —— U.S. ——,

13  129 S.Ct. 2308 (2009).  In doing so, the Supreme Court noted that it is an "open question"

14  whether a freestanding claim of actual innocence exists and that the court has "struggled with it

15  over the years, in some cases assuming, arguendo, that it exists while also noting the difficult

16  questions such a right would pose and the high standard any claimant would have to meet."  129

17  S.Ct. at 2321.

18          The Ninth Circuit Court of Appeals has likewise assumed that freestanding

19  innocence claims are cognizable in both capital and non-capital cases and has also articulated a

20  minimum standard of proof in order for a habeas petitioner to prevail on such a claim.  Carriger

21  v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).  Under that standard "[a] habeas

22  petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about

23  his guilt, and must affirmatively prove that he is probably innocent."  Id. at 476-77; see also

24  Jackson, 211 F.3d at 1165.  The petitioner's burden in such a case is "extraordinarily high" and

25  requires a showing that is "truly persuasive."  Carriger, 132 F.3d at 476 (quoting Herrera, 506

26  U.S. at 417).

1      Here, assuming arguendo that a freestanding claim of actual innocence may be

2  maintained in this non-capital case, the undersigned finds that petitioner has failed to make the

3  showing required to entitle him to federal habeas relief.  Petitioner's claim of actual innocence

4  relies on a transcript of trial proceedings on January 11, 2006 in the Solano County Superior

5  Court, during petitioner's first trial on the counts at issue, which resulted in a hung jury.  (Ptn. at

6  24, 58-73; Dkt. 11-1 at 1-29.)  The transcript recounts how the victim, Belinda Hill, testified

7  under oath that petitioner is not the person who assaulted her on June 28, 2005, and that he had

8  never hurt her.  (Ptn. at 59-65.)  Under direct examination by petitioner, who represented himself

9  at the first trial, Ms. Hill claimed that she was under the influence of drugs and "kind of

10 confused" when she identified petitioner as her attacker to the police.  She stated that, when

11 petitioner arrived on the scene, she had been fighting with Barbara Rubio and "two other girls."

12 (Id.)  Ms. Hill stated that Barbara Rubio and others convinced her to falsely blame petitioner for

13 the attack.  (Id.)

14      Along the same lines, petitioner has attached to the petition a handwritten

15 statement by Ms. Hill dated August 17, 2007.  In it, Ms. Hill stated that petitioner was innocent

16 of attacking her in June 2005 and claimed she was tricked by lawyers into not testifying at

17 petitioner's second trial.  (Dkt. 11-1 at 31-33.)

18      The gravamen of petitioner's actual innocence claim is that Ms. Hill's testimony,

19 which would have exonerated him, was not introduced into evidence at his second trial, resulting

20 in a false conviction.  (Ptn. at 24-25.)  However, the court does not agree with petitioner that Ms.

21 Hill's after-the-fact statements that petitioner never hurt her "[meet] the high threshhold" for a

22 cognizable claim of actual innocence on federal habeas review.  Because petitioner's guilty

23 conviction was supported by evidence other than testimony from the victim (who did not testify

24 at his second trial), the fact that the victim at some point changed her account of the events of

25 June 28, 2005 does not "affirmatively prove that he is probably innocent."  Carriger, supra, 132

26 F.3d at 476-477.  Thus, assuming arguendo that a freestanding claim of actual innocence may be

maintained in this non-capital case, petitioner has failed to meet the high standard necessary to warrant federal habeas relief.  The undersigned will recommend that petitioner's actual innocence claim be dismissed.

II.  Petitioner's Motions

On July 6, 2011, petitioner filed a three-page motion entitled a "motion for summary judgment," asking the court to "vacate his conviction, order an evidentiary hearing and order this petitioner to be release[d] within 10 to 30 days of the evidentiary hearing."  (Dkt. No. 17.)  As this is not a proper motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and because petitioner is not entitled to an evidentiary hearing as discussed below, the court will deny this motion in its entirety.

On July 25, 2011, petitioner filed a motion for an evidentiary hearing.  (Dkt. No. 22.)  He complains that the California Supreme Court denied his state habeas petition in a summary denial without making findings of law or fact or allowing petitioner to present new evidence.  He asks this court to grant him an evidentiary hearing to present "newly supplied" evidence and testimony that would show that "the prosecution's own key witnesses Barbara and Nicholas Rubio . . . were actually responsible for" beating Belinda Hill on the night of June 28, 2005.  (Id. at 3.)

First, the state supreme court in no way erred by issuing a summary denial.  In Harrington v. Richter, 131 S. Ct. 770 (Jan. 19, 2011), the Supreme Court held that a summary denial by a state court is entitled to the same deference as a reasoned denial.  When reviewing a state court's summary denial of a claim on federal habeas review, the court "looks through" the summary disposition to the last reasoned decision.  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000), citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, (1991).  Petitioner's remaining claims will be reviewed accordingly.

Second, petitioner is not entitled to an evidentiary hearing at this stage.  In Cullen v. Pinholster, __U.S.__, 131 S.Ct. 1388 (2011), the Supreme Court held that, when a state court

1   decides a habeas claim on the merits, the federal court's inquiry under 28 U.S.C. § 2254(d)(1) is

2   limited to the record before the state court.  Courts since <u>Pinholster</u> agree that the limitation of

3   review to the state court record also applies to review under § 2254(d)(2).  <u>E.g.</u>, <u>Coddington v.</u>

4   <u>Cullen</u>, No. CIV S 01-1290 KJM GGH, 2011 WL 2118855 (E.D. Cal. May 27, 2011).  Here,

5   because the state court of appeal decided petitioner's habeas claims on the merits, the record on

6   federal habeas review is limited to the record before the state court.

7            Accordingly, IT IS HEREBY ORDERED that:

8            1.  Petitioner's July 6, 2011 motion for relief, nominally a "motion for summary

9   judgment" (Dkt. No. 17), is denied;

10           2.  Petitioner's July 25, 2011 motion for evidentiary hearing (Dkt. No. 22) is

11  denied; and

12           3.  The Clerk of Court shall assign a district judge to this action.

13           IT IS HEREBY RECOMMENDED that:

14           1.  Petitioner's July 19, 2011 motion to dismiss in part (Dkt. No. 19) be granted,

15  such that the following claims are dismissed: trial court erred in admitting prior conviction for

16  impeachment purposes; and trial court erred in denying petitioner's motion to suppress evidence;

17  and

18           2.  Respondent's June 28, 2011 motion to dismiss petition in part (Dkt. No. 15) be

19  granted, such that the following additional claims are dismissed: ineffective assistance of trial

20  counsel Moe; and actual innocence.

21           These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

23  one days after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26  shall be served and filed within fourteen days after service of the objections.  The parties are

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   Dated: December 5, 2011

4

5                                                          CAROLYN K. DELANEY
                                                           UNITED STATES MAGISTRATE JUDGE
6

7   2
8   thom0180.mtd