IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY C. THOMAS,<br><br>                    Petitioner,<br><br>vs.<br><br>CONNIE GIPSON, Warden, California<br>State Prison-Corcoran,[1]<br><br>                    Respondent. | No. 2:11-cv-00180-JKS<br><br>MEMORANDUM DECISION |

Johnny C. Thomas, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Thomas is in the custody of the

California Department of Corrections and Rehabilitation and incarcerated at the California State

Prison-Corcoran.  Respondent has answered, and Thomas has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

Upon direct appeal of his conviction, the California Court of Appeal summarized the

following facts underlying Thomas's conviction:

> On the evening of June 28, 2005, . . . the victim visited the Fairfield apartment of her friends Barbara and Nicholas Rubio.  FN2  The three drank beer but did not use drugs.  Around 2:00 the next morning, [Thomas] went to the Rubios' apartment and knocked on their window.  Barbara let [Thomas] into her home, and [Thomas] began threatening the victim about coming home.  The victim told [Thomas] she "would be there," [Thomas] left, and the victim spent the night at the Rubios' apartment.
> FN2. To avoid confusion, we refer to the Rubios by their first names.
> Later that morning, around 8:00, [Thomas] returned to the Rubios' apartment, banged on their front door, and entered the apartment.  [Thomas] threw Nicholas's phone down and "just went wild."  He punched the victim, kicked her in the ribs, grabbed her by the head, and slammed her onto the dining room table, breaking the table in half.  According to Nicholas, the victim tried to get out of the apartment, but [Thomas] hit and

---

[1]        Connie Gipson, Warden, California State Prison-Corcoran, is substituted for Gary Swarthout, Warden, California State Prison-Solano.  FED. R. CIV. P. 25(c).

kicked her until she was on the ground in "a puddle of blood." Barbara testified that [Thomas] dragged the victim out of the Rubios' apartment by her hair. Barbara went to her next door neighbor's apartment and asked her neighbor to call 911.

[Thomas] fled in a white car. When police arrived at the scene, they saw blood in the hallway that led to the Rubios' apartment. The victim was in the Rubios' apartment holding a blood-soaked compress to her head. She had a "golf ball size egg on her forehead" and an open cut on her face that was bleeding. The victim was taken by ambulance to the hospital, where she was crying and visibly upset. She had a "gaping wound" over her eye that required stitches. The victim appeared to be under the influence of alcohol. Police spoke with the victim at the hospital, and she appeared to be frightened to report who caused her injuries.

Police were dispatched back to the Rubios' apartment around 8:53 a.m. after receiving a report that the person who beat the victim had returned and was banging on the door. When officers arrived at the scene, they saw a white car that appeared to be unoccupied in front of the apartment complex. When officers walked toward the apartment, they saw [Thomas's] head "pop up" in the back seat of the car. [Thomas] was arrested. After he was read his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, [Thomas] said that the victim was injured when she fell down.

[Thomas] was charged by information with corporal injury to a spouse or cohabitant ([California Penal Code] § 273.5, subd. (a) FN3-count 1), with an allegation that [Thomas] personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). The information also alleged a strike prior (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) based on a 1983 homicide conviction in Texas. The information later was amended to allege an additional strike prior based on a 1975 Texas burglary conviction . . . . [A] second amended information was later filed to add a count of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)-count 2), with an allegation that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)).

FN3. All statutory references are to the [California] Penal Code unless otherwise indicated.

[Thomas] was represented by counsel at his preliminary hearing, but the trial court later granted defendant's motion pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) to represent himself. [Thomas] represented himself at his first trial, which ended in a hung jury; the trial court declared a mistrial. An attorney represented [Thomas] at his second trial after [he] requested counsel. Nicholas and Barbara testified at the second trial, and identified [Thomas] as the person who beat the victim. The victim did not testify after a deputy public defender representing her stated that the victim would be asserting her Fifth Amendment privilege against self-incrimination, based on the fact that she might expose herself to perjury charges for filing a false police report. FN4  Because the People did not want to grant the victim immunity, the prosecutor elected to proceed to trial without the victim's testimony. However, members of the victim's family, including her teenaged daughter, testified that [Thomas] was driving the victim's daughter to school at the time of the beating, which supported [Thomas's] claim

that the Rubios fought with the victim and [Thomas] arrived only after the victim suffered injuries.

> FN4. [Thomas] previously had filed a "Declaration of Innocence Statement" from the victim, in which she claimed that it was the Rubios and their neighbor, not [Thomas], who beat her, and that they also forced her to accuse [Thomas] of the beating.

The jury found [Thomas] guilty as charged, and found the related great bodily injury allegations true.  Following a court trial, the trial court found the prior conviction allegations true.  FN5

> FN5. The trial court later granted [Thomas's] motion for a new trial as to the strike based on the Texas burglary conviction.  The prosecutor later conceded that the burglary conviction should be stricken, because there was insufficient proof that the conviction qualified as a residential burglary under California law.

The trial court sentenced [Thomas] to a total term of 18 years, calculated as follows: the upper term of four years on count 1, doubled to eight years because of the strike prior, plus the upper term of five years on the great bodily injury enhancement (§ 12022.7, subd. (e)), with an additional five years for the serious felony enhancement (§ 667, subd. (a)(1)).

*People v. Thomas*, No. A120983, 2009 WL 2197279, at *1-2 (Cal. Ct. App. July 24, 2009).

Through counsel, Thomas appealed his conviction, arguing that: 1) the trial court abused its discretion in allowing the prosecution to impeach a defense witness with a prior conviction; 2) his right to a speedy trial was violated; 3) the trial court abused its discretion by allowing the prosecution to amend the information to include an additional count; 4) he was subject to vindictive prosecution; 5) he was impermissibly subject to multiple convictions for the same offense; and 6) the trial court erred in denying his motion to suppress evidence that was obtained as a result of a warrantless search.  The Court of Appeals affirmed his convictions in a reasoned opinion.  Thomas petitioned for review to the California Supreme Court, which was summarily denied on November 10, 2009.

Thomas also filed as a companion writ to his appeal a counseled petition for a writ of habeas corpus to the Court of Appeal dated April 8, 2009.  Thomas's companion writ asserted

that trial counsel was ineffective for failing to object to "prejudicial security measures." The petition was summarily denied on July 24, 2009.

Thomas then filed a *pro se* petition for a writ of habeas corpus to the supreme court dated October 21, 2009, alleging that habeas relief was warranted because: 1) the prosecutor committed misconduct by knowingly introducing perjured testimony and "denying [Thomas] his right to confront the victim"; 2) his preliminary hearing counsel was ineffective for failing to call the victim to the stand; 3) he was denied his right to confront the victim; and 4) he was actually innocent of the charges. The supreme court denied the petition without comment on February 16, 2011.

Thomas timely filed a Petition for a Writ of Habeas Corpus to this Court on January 12, 2011, and an Amended Petition on April 26, 2011.

## II. GROUNDS/CLAIMS

In his *pro se* Amended Petition, Thomas asserts the following grounds for habeas relief: 1) ineffective assistance of trial counsel; 2) prosecutorial misconduct; 3) ineffective assistance of preliminary hearing counsel; 4) violation of his confrontation rights; 5) actual innocence; 6) improper introduction of a prior conviction to impeach a defense witness; 7) violation of his right to a speedy trial; 8) vindictive prosecution; and 8) erroneous denial of his motion to suppress evidence. He also requests that an evidentiary hearing be held on his claims.

On June 28, 2011, Respondent filed a motion to dismiss the Amended Petition in part, arguing that Thomas had not exhausted state remedies as to three claims: (1) ineffective assistance of trial counsel; (2) trial court erred in admitting prior conviction for impeachment purposes; and (3) trial court erred in denying petitioner's motion to suppress evidence. Docket

No. 15 at 2-3.  Respondent also argued that Thomas's actual innocence claim should be dismissed as it is not cognizable on federal habeas corpus review.  *Id*. at 4-5.

On July 15, 2011, Thomas filed a motion to dismiss the Amended Petition in part, conceding that he had not exhausted state remedies as to claims (2) and (3) above, and asking the court to dismiss those claims.  Docket No. 19.  In his opposition to the motion to dismiss, also filed July 15, 2011, Thomas argued against dismissal of claim (1) above, claiming ineffective assistance of trial counsel, and also argued against dismissal of his actual innocence claim.  Docket No. 20.

Also, on July 1, 2011, Thomas filed a three-page motion for relief (entitled a "motion for summary judgment") asking the court to "vacate his conviction, order an evidentiary hearing and order this petitioner to be release[d] within 10 to 30 days of the evidentiary hearing."  Docket No. 17.  On July 21, 2011, Thomas moved for an evidentiary hearing "to present arguments, newly supplied record and testimonies of witnesses" as to his claims, arguing that such a hearing was required because the California Supreme Court issued a summary denial of his claims without making factual findings.  Docket No. 22.

On December 5, 2011, the magistrate judge denied Thomas's motions for summary judgment and for an evidentiary hearing and recommended that Thomas's and Respondent's motions to dismiss the Amended Petition in part be granted.  Docket No. 30.  On March 31, 2012, this Court adopted the magistrate's recommendations in its entirety at Docket No. 39.

In a later order, this Court recognized that Thomas had filed in his California Supreme Court case an amended petition for a writ of habeas corpus which included the claim that trial counsel was ineffective because of his failure to challenge the suppression of the alleged victim's

5

testimony.  *See* Docket Nos. 48, 24 (unnumbered attachment).  The Court then vacated that portion of its order of March 31, 2012, granting Respondent's motion to dismiss the ineffective assistance of trial counsel claim.

In light of these proceedings, the claims presently before this Court are: 1) ineffective assistance of trial counsel for failing to challenge the suppression of the alleged victim's testimony; 2) prosecutorial misconduct for knowingly introducing perjured testimony; 3) ineffective assistance of preliminary hearing counsel for failing to call the alleged witness to the stand; 4) violation of his confrontation rights because he could not question the alleged victim; 5) violation of his right to a speedy trial; and 6) vindictive prosecution.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable." *Id.* at 412; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63; 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous'" (citation and internal quotation marks omitted)).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that a petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Under the AEDPA, the state court's findings of fact are presumed to be correct

unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## IV. DISCUSSION

### *Ineffective Assistance of Counsel Claims* (Claims 1 and 3)

Thomas first claims that he received ineffective assistance from both his trial and preliminary hearing counsel.

A.      *Strickland* Standard on Habeas Review

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Thomas must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

B.       Claim 1: Ineffective Assistance of Trial Counsel

Thomas first claims that his trial counsel was ineffective when he "sat by passively allowing the prosecution to illegally suppress the material testimony of [the victim], a testimony that resulted in a hung jury in the first trial."  He further contends that "[t]he records do show that [trial counsel] assisted the prosecution in framing [him] with false evidence to secure a tainted conviction."

Thomas raised this claim to the state courts in his April 18, 2012, petition for a writ of habeas corpus in the California Supreme Court.  The supreme court denied the petition without comment but cited *In re Robbins*, 959 P.2d 311, 18 Cal. 4th 770, 780 (Cal. 1998), and *In re Clark*, 855 P.2d 729, 5 Cal. 4th 750, 767-69 (Cal. 1993), in support of the denial.

Respondent contends that this claim is procedurally barred because the California Supreme Court denied the claims on habeas review as untimely with a citation to *Robbins* and *Clark*.  A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.  *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  A state prisoner seeking federal habeas relief must first exhaust the remedies available in the state courts in order to afford those courts the

opportunity to address and correct alleged violations of the petitioner's federal rights. *Walker*, 131 S. Ct. at 1127 (citing *Coleman*, 501 U.S. at 731). The "adequate and independent state ground doctrine" ensures that habeas petitioners are not able to avoid the exhaustion requirement by merely defaulting their federal claims in state court. *Id.*

The Supreme Court has recognized that, when the California Supreme Court cites *Robbins*, particularly page 780 of that opinion, and *In re Clark*, the state court signals "that a habeas petition is denied as untimely." *Walker*, 131 S. Ct. at 1124; *see also Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007). The Supreme Court has further instructed federal habeas courts that citations to *Robbins* and *Clark* are independent and adequate state procedural grounds requiring denial of a subsequent federal habeas petition. *See Walker,* 131 S. Ct. at 1125 (abrogating *Townsend v. Knowles*, 562 F.3d 1200 (9th Cir. 2009)). Thomas does not present any argument in his Traverse that there was cause and prejudice to excuse his untimely presentation of these grounds to the California Supreme Court. Respondent is therefore correct that Thomas's ineffective assistance of trial counsel claim is therefore procedurally barred as to his arguments that trial counsel allowed the prosecution to suppress the victim's testimony and assisted the prosecution in framing him with false evidence.

Moreover, Thomas alleges in his Petition that preliminary counsel was ineffective for failing to call the victim to testify, *see* claim 3, *infra*; he does not contend that his trial counsel was ineffective for failing to do so. Even if this Court were to construe Thomas's claim that trial counsel was ineffective for "passively allowing the prosecution to illegally suppress" the victim's testimony as an ineffective assistance claim for failure to call the victim to testify, such claim is not cognizable before this Court because he failed to present the claim to the state

courts.  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the

state courts in order to give the state the opportunity to pass upon and correct alleged violations

of its prisoners' federal rights.  *See Duncan v. Henry*, 513 U.S. 364, 365 (1995).  To be deemed

exhausted, a claim must have been presented to the highest state court that may consider the

issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Unexhausted claims

must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).  Because this claim also

would be untimely before the state courts, Thomas may not now return to state court to exhaust it

and the claim may be deemed exhausted but procedurally defaulted from habeas review.  *See*

*Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994).

Thomas also attaches to his Petition an excerpt from another brief that argues that trial

counsel was ineffective for failing to object to "prejudicial security measures."  Respondent

contends this portion of his claim is unexhausted because it was not presented to the state

supreme court.  Thomas raised this claim in his counseled petition for a writ of habeas corpus to

the Court of Appeal, which was filed as a companion writ to his appeal.  The petition was

summarily denied on July 24, 2009, and the record does not indicate that Thomas petitioned to

the California Supreme Court for review of the denial.  Because Thomas failed to present this

claim to the state supreme court, this Court cannot consider this claim either on habeas review,

particularly given that Thomas's failure to present this claim fully to the state courts renders it

difficult for this Court to adjudicate this claim based on the record before it.  Thomas therefore

cannot prevail on any argument offered in his ineffective assistance of trial counsel claim.

C.      Claim 3: Ineffective Assistance of Preliminary Hearing Counsel

Thomas likewise argues that he was denied effective assistance of counsel because the counsel representing him during his preliminary hearing failed to call the victim to testify at that hearing.  According to Thomas, the victim would have testified that Thomas did not assault her and thus would have impeached the arresting officer's testimony.  Thomas alleges that "[c]ounsel's actions constituted an indifference to proving [his] actual innocence at the preliminary hearing and violated his 6th Amendment right to effective assistance of counsel at a critical stage of the proceedings."  Thomas raised this claim in his habeas petition to the state supreme court, which was summarily denied.

The ultimate decision not to call witnesses to testify is well within counsel's "full authority to manage the conduct of the [proceeding]."  *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses on the stand . . . .").  Thomas fails to overcome the strong presumption that preliminary hearing counsel's conduct fell within the wide range of reasonable professional assistance because he cannot show that preliminary hearing counsel's failure to call the victim was not a tactical decision that this Court cannot second-guess.  *See, e.g., Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial.").

In *People v. Brown*, 94 P.3d 574 (Cal. 2004), the California Supreme Court held that expert testimony regarding the behavior of victims of domestic violence was admissible under California Evidence Code § 801 to assist the jury in evaluating the credibility of the victim's trial

testimony when it was inconsistent with earlier statements.  94 P.3d at 583-84.  In this case,

counsel may have believed that allowing the victim to testify would have opened the door to

expert testimony about domestic violence, which may have been more harmful to Thomas's

case.  Thus, counsel's tactical decision not to call the victim as a witness was not constitutionally

deficient.  *See Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980) ("Mere criticism of a

tactic or strategy is not in itself sufficient to support a charge of inadequate representation."); *cf.*

*Cervantes v. McEwan*, 446 F. App'x 927, 928 (9th Cir. 2011) (counsel not constitutionally

ineffective for failing to call alibi witnesses when counsel "could have made the strategic

determination that their testimony would have been so implausible as to undermine [petitioner's]

defense"), *cert. denied*, 132 S. Ct. 1561 (2012).

Moreover, counsel's failure to call the victim was not prejudicial.  The prosecutor's

burden during the preliminary hearing was to show probable cause to believe that Thomas had

committed a felony.  Cal. Penal Code § 866(b).  Given the testimony and evidence identifying

Thomas as the assailant, no reasonable probability existed that the victim's testimony would

eradicate the showing of probable cause.  Thomas therefore cannot prevail on his ineffective

assistance of preliminary hearing counsel either.

*Prosecutorial Misconduct Claims* (Claims 2 and 6)

Thomas also raises two claims alleging reversible error on the part of the prosecutor.

A.      Claim 2: Knowing Introduction of Perjured Testimony

Thomas next claims that the prosecutor committed misconduct by "knowingly

present[ing] perjured prosecutorial witness testimony."  Thomas contends that "[t]he record[]

shows that the prosecutor did knowingly and intentionally introduce perjured testimony from

14

Barbara and Nicholas Rubio for the sole purpose of gaining a tainted unlawful conviction."

Thomas asserted this claim in his habeas petition to the state supreme court, which was

summarily denied.

An independent review of the record establishes that Thomas's claim for prosecutorial

misconduct stemming from the presentation of the Rubios's testimony is without merit.

Although the prosecutor has a duty to refrain from knowingly presenting perjured testimony,

*United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record in this case does not

establish that the prosecutor knew or should have known that their testimony was false or that

their testimony was, in fact, false.  The only evidence Thomas proffers to establish falsity is the

recantation of the victim.  Pet. at 13.  However, the conflicting version of events, at most, created

issues of fact and credibility for the jury to resolve.  *Cf. id.* (distinguishing prosecutorial

misconduct in presenting perjured testimony from the presentation of evidence that included

conflicting versions of criminal events).  Moreover, Thomas had an opportunity to impeach the

Rubios on cross-examination and challenge their credibility before the jury.  These

circumstances provide no basis for habeas relief on the ground of prosecutorial misconduct.  *See*

*United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997) ("The fact that . . . other witnesses

have conflicting recollections of events . . . does not establish that the testimony offered at trial

was false.").  Accordingly, Thomas is not entitled to relief on his prosecutorial misconduct

claim.

B.      Claim 6: Vindictive Prosecution

Thomas next argues that the court "abused its discretion by not dismissing the

information because of vindictive prosecution."  In considering this claim on direct appeal of

Thomas's conviction, the Court of Appeal described the following facts:

> [Thomas] argues that the trial court should have dismissed the information based
> on alleged vindictive prosecution.  Before [Thomas's] first trial and while he was
> representing himself, [Thomas] filed a motion to dismiss on grounds of vindictive
> prosecution.  He claimed that after a lineup he requested did not support the
> prosecution's case, the prosecution thereafter filed an amended information that added a
> strike allegation, which exposed him to a possible punishment of 25 years to life if
> convicted.  The prosecution explained in its opposition that the People were not at first
> certain that the prior Texas burglary conviction would be considered a serious violent
> felony under California law.  The prosecution sought to amend the information after it
> verified that the burglary conviction would be considered a serious violent felony, and
> after the case was set for trial following [Thomas's] rejection of a plea offer that would
> have exposed him to a 13-year prison sentence.  The trial court denied the motion, and
> [Thomas] argues on appeal that the trial court erred.

*Thomas*, 2009 WL 2197279, at *9 (footnote omitted).

The Court of Appeal ultimately denied Thomas's claim, finding a "complete absence of

evidence to support" the vindictive prosecution claim.  *Id.* at *10.  It noted that no presumption

of vindictiveness applied because Thomas challenged only pretrial actions by the prosecutor.  *Id.*

The appellate court further determined that Thomas waived by not raising it in his motion to

dismiss below his claim that the prosecutor was motivated by vindictiveness due to Thomas's

rejection of the plea offer.  *Id.*  The court additionally denied the claim on the merits under

California law.  *Id.*

As an initial matter, even if the trial court abused its discretion by not dismissing the

information, such error does not warrant habeas relief.  Although the Ninth Circuit has suggested

that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218

16

F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[2]  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.  *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so–the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (quoting § 2254(d)(1))).

Moreover, Thomas has failed to demonstrate that the prosecutor's decision to amend the information with an additional strike allegation was motivated by actual vindictiveness.  Thomas provides no evidence other than speculation that the prosecutor amended the information solely to punish Thomas for exercising his rights.

Thomas has also failed to make a showing sufficient to raise a presumption of vindictiveness or to overcome the presumption of prosecutorial regularity.  First, the prosecutor's amendment was not a post-conviction action but rather a pretrial decision, which is presumptively lawful.  *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense

---

[2]        At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000).  This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard.  *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc).  The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA.  *Lockyer*, 538 U.S. at 75-76 (clear error standard is insufficiently deferential to state courts).

defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.").  Likewise, the circumstances surrounding the amendment do not establish a likelihood of vindictiveness.  Rather, the addition of those charges appears to have been a proper exercise of prosecutorial discretion.  In enacting the three strikes law, the California legislature directed that "the prosecution shall plead and prove all known prior felony convictions" and shall not enter into any agreement to strike or seek the dismissal of any prior serious and/or violent felony conviction allegation unless there is insufficient evidence to prove the prior felony conviction.  CAL. PENAL CODE § 667(f)-(g).  It appears that the prosecution reasonably amended the information to charge Thomas with a second strike allegation once the facts for such allegation became known.  *See United States v. Preciado-Gomez*, 529 F.2d 935, 941 (9th Cir. 1976) (addition of new counts in a superceding indictment referring to conduct occurring prior to first indictment which was previously unknown or unproved by competent evidence is not vindictive prosecution).  Accordingly, Thomas's claim of vindictive prosecution is unsupported in the record and does not warrant habeas relief.

*Claims Alleging Violations of Other Constitutional Rights* (Claims 4 and 5)

    A.    Claim 4: Right to Confrontation

Thomas also alleges that he was denied his right to confront the victim.  Thomas likewise raised this claim in his habeas petition to the state supreme court, which was summarily denied.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete

18

defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted); *Moses v. Payne*, 555

F.3d 742, 757 (9th Cir. 2009).  The Supreme Court has explained the importance of these rights:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19 (1967).

Thomas's confrontation claim must fail, however, because the prosecution's failure to

call a particular witness does not violate a petitioner's right of confrontation.  *Cooper v.*

*California*, 386 U.S. 58, 62 n.2 (1967) (rejecting as "absolutely devoid of merit" petitioner's

contention that the prosecution's failure to produce a particular witness violated the petitioner's

right of confrontation).

Moreover, Thomas has presented no evidence, and the Court can find no evidence in the

record, that Thomas himself was in any way prevented from calling the victim at trial.  The

record indicates that, when the second trial commenced, the parties discussed with the court

whether the victim would testify for the prosecution.  The parties further considered whether the

victim would be subject to prosecution for reporting a crime to the police, later stating that the

report was false, and then testifying under oath that the crime did not occur.  Counsel for the

victim indicated that she intended to assert a Fifth Amendment privilege in the event she was

called to testify.  The prosecution stated that he intended to present his case without the victim's

testimony.  Defense counsel stated that he did not know if he would call the victim to testify for

the defense, and the victim was ordered back to court the following week for the defense case.

19

Defense counsel, however, later stated that he was not planning on calling the victim to testify.

Indeed, the record shows that the victim testified in the first trial against Thomas.  Her testimony

from the first trial could have been introduced in the second trial under California Evidence

Code § 1291 and Federal Rule of Evidence 804(b)(1), which allow the admission of a witness's

prior testimony if the witness is unavailable due to her refusal to testify and the party against

whom the evidence is introduced had a prior opportunity to cross-examine the witness.  *See also*

*Crawford v. Washington*, 541 U.S. 36, 68 (2004).

Based on the foregoing, the state court's rejection of Thomas's confrontation claim was

neither contrary to, nor involved an unreasonable application of, clearly established federal law,

as determined by the United States Supreme Court.  Thus, habeas relief is not warranted on this

claim.

B.      Claim 5: Right to Speedy Trial

Finally, Thomas contends that "[t]he court abused its discretion by denying [Thomas] his

right to a speedy trial."  In considering this claim on direct appeal, the Court of Appeal recounted

the following facts:

> [Thomas] was arrested on June 29, 2005, the same day he injured the victim.  He
> indicated at his arraignment on July 25, 2005 that he did not waive time.  The trial court
> suspended proceedings on July 26, 2005 after [Thomas's] counsel raised doubts about
> [Thomas's] competency to stand trial. On August 23, 2005, apparently after a conflict
> was declared, the public defender was relieved as counsel, and an attorney from the
> conflict defender's office was appointed.  Proceedings resumed on September 13, 2005,
> after the court found [Thomas] competent to stand trial.  [Thomas's] attorney and the trial
> court then agreed that November 14, 2005 was the last day to hold trial, because
> [Thomas] had not waived his right to be tried within 60 days of his arraignment.
> ([California Penal Code] § 1382, subd. (a)(2).)  A trial date of November 2 was set.
> Following a telephone call from the conflict defender's office, the trial court on
> October 21, 2005 set a hearing date of October 25 to consider defendant's motion to
> substitute counsel pursuant to  *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden)*.  On
> October 25, eight days before the case was set for trial, the conflict defender's office

declared a conflict and was relieved as counsel.  According to the trial court's minute order, the court appointed "L. Oldwin/B. Newman" to represent [Thomas].  On October 31, 2005, the date that previously had been set for a readiness conference, the trial court granted [Thomas's] request for a continuance.  The trial court's October 31 minute order states: "Atty Newman req. a cont.  Court grants cont.  (good cause appearing)."  The court set a trial date of January 5, 2006, with a readiness conference on January 3.

[Thomas] again requested that his attorney be replaced, and a *Marsden* motion was set for a hearing on November 30, 2005.  At the hearing on the motion, [Thomas] indicated that he wanted to represent himself, and he filed a *Faretta* motion.  The trial court questioned [Thomas] about his desire to represent himself.  The following exchange took place during the trial court's questioning:

"The Court: And you have a right to a speedy trial, and we've set your trial.  I believe time has been waived, but we've set your trial.  And you understand that you had a right to a speedy trial; is that correct?

"[Thomas]: Yes, I do.  But I did not waive my right to a speedy trial.

"The Court: Okay.  And it was set so that your attorney could prepare; is that correct?

"[Thomas]: Yes, but he should have gotten only 60 days."

After further questioning about [Thomas's] ability to represent himself, the trial court granted [Thomas's] *Faretta* motion and relieved [Thomas's] attorney (Barry Newman) as counsel.  Toward the end of the hearing, the prosecutor stated, "The other thing is the time-waiver situation, in this particular case, [Thomas] has not waived time.  However, the January 5th, 2006, jury trial date was set because it was represented by Mr. Newman at the time that he would-that he would not be prepared to proceed to trial on the previously set date, so that's why we have January 5th.  The trial court stated, "Well, that's on the record, but I believe that's correct. [] And that is an accurate statement of the facts, Mr. Newman; is that correct?"  The attorney responded, "Yes."

Proceeding in propria persona, [Thomas] filed a motion to dismiss, arguing that his statutory right to a speedy trial ([California Penal Code] § 1382, subd. (a)(2)) had been violated.  [Thomas] argued at the hearing on the motion that his previous attorney was "not supposed to be able to waive my right [to a speedy trial] for me.  I did not waive my right."  The trial court stated, "I understand you've never waived your right to a speedy trial.  You've never waived that right, but your attorney had indicated that he needed that time there to be prepared to adequately represent you, so that it wasn't just a token appearance."  [Thomas] noted that he never personally waived his right to a speedy trial even though his former attorney had requested a continuance, and that he elected to represent himself because Newman had "deceive[d] the Court into thinking that I waived my right."  The prosecutor argued that there had been good cause to continue trial.  He stated, "Mr. Newman indicated when he was appointed on this case that he was unprepared to proceed to trial, and [Thomas's] constitutional right to have a prepared counsel supersedes any statutory right.  The Court found good cause, and the Court set the trial for the 5th.  It's true he hasn't waived time, but, again, his right to have a prepared attorney supersedes any statutory right."  The trial court denied [Thomas's]

motion.  [Thomas] renewed his motion after his second trial (when he was again representing himself); the trial court denied the motion.

*Thomas*, 2009 WL 2197279, at *4-5 (footnotes omitted).

The Sixth Amendment to the United States Constitution guarantees an accused criminal the right to a speedy trial.  *Doggett v. United States*, 505 U.S. 647, 651 (1991) (explaining that a court should assess four factors in determining whether the Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right; and (4) whether the defendant suffered prejudice as a result of the delay); *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

On direct appeal, the Court of Appeal considered these four factors and concluded:

> The only factor that weighs in [Thomas's] favor is that he consistently asserted his right to a speedy trial.  However, the length of the delay (about two months in a felony case) was minimal, and the delay was called for a valid reason (so that [Thomas's] attorney could prepare for trial).  (*Vermont v. Brillon* (2009) --- U.S. ----, 129 S.Ct. 1283, 1291-1292 [delays caused by continuances requested by assigned counsel may not be attributed to state for purposes of speedy trial analysis].)  Finally, [Thomas] cannot demonstrate prejudice that resulted because of the delay.  Indeed, [Thomas] himself stated at the readiness conference on January 3, 2006 that he would not be ready for trial on the date originally selected by his attorney.  We reject [Thomas's] speedy trial claim.

*Thomas*, 2009 WL 2197279, at *6.

An independent review of the four factors compels the same conclusion reached by the Court of Appeal.  First, the two-month delay in a felony trial was relatively brief and does not weigh heavily in favor of finding a violation of speedy trial rights.  *See Doggett*, 505 at 652 n.1 (Supreme Court suggested that a delay of one year is presumptively prejudicial).

Second, as set forth above, Thomas's counsel gave detailed and persuasive reasons for needing a brief trial continuance.  Because the trial court found good cause under California law

22

and granted the continuance to ensure counsel could adequately defend Thomas, this factor weighs strongly in favor of concluding that Thomas's speedy trial rights were not violated.

As the appellate court determined, the third factor is the only factor that weighs in Thomas's favor as he consistently asserted his right to a speedy trial.

Fourth, Thomas's claim of prejudice is not persuasive.  He states that "[t]he longer he was incarcerated, the more evidence the state could amass against him by monitoring his phone calls."  Thomas's assertion that the state was able to obtain evidence against him by monitoring his phone calls is pure speculation which fails to establish that he suffered specific actual prejudice resulting from the two-month continuance of his trial.

Based on the foregoing, Thomas cannot demonstrate that the appellate court's determination that Thomas's right to a speedy trial was not violated when counsel requested a brief continuance of trial over Thomas's objection, was contrary to, or involved an unreasonable application of federal law.  Thomas is therefore not entitled to habeas relief on his speedy trial claim.

*Evidentiary Hearing*

With respect to a number of his claims, Thomas also requests that this Court grant him an evidentiary hearing.  Thomas fails, however, to specify what evidence he wishes to present for each claim.  A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the

claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963).  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), overruled in part by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

As discussed above, Thomas has failed to assert a colorable claim for relief as to any of his claims.  Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts, he also has failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2).  Accordingly, Thomas's request for an evidentiary hearing also must be denied.

## V. CONCLUSION AND ORDER

Thomas is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 5, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge